IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2007

Charles R. Fulbruge III
Clerk

No. 07-60011

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KENDRICK FITZGERALD PROCTOR,
also known as Kendrick Shavers,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:

Kendrick Fitzgerald Proctor ("Proctor") was convicted by a jury of theft of a firearm, possession of a stolen firearm, and felon in possession of a firearm. He appeals these convictions, arguing that the indictment should have been dismissed based on unnecessary delay and that the district court's admission of a 911 tape-recording violated his right of confrontation under Crawford v. Washington, 541 U.S. 36 (2004). We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

On August 4, 2001, Proctor's brother, Rodriguez "Yogi" Proctor ("Yogi") and Bobby Fairley ("Fairley") went to a nightclub together in Biloxi, Mississippi. Yogi had driven and Fairley left his gun, a .38 special revolver, on the dashboard

of Yogi's car. Upon leaving the nightclub, Yogi introduced Fairley to Proctor, and all three walked to Yogi's car. Yogi then opened the passenger door for Fairley, at which point Proctor grabbed Fairley's gun which was in plain view on the console of the car. Fairley protested that the gun belonged to him, but Proctor began "cussing" and fired the gun twice into the ground near Fairley's foot. Proctor took off running with the gun. Yogi called 911, and reported that his brother had taken a gun, fired it twice into the ground, and that he believed Proctor had run back into the nightclub. The police arrived on the scene and canvassed the area for Proctor. An officer spotted Proctor, and pursued Proctor on foot. Proctor fired at the officer, and the officer fired back, striking Proctor.

On May 11, 2006, Proctor was charged in a three-count indictment with various firearms-related offenses under 18 U.S.C. §§ 922 & 924. On August 10, 2006, Proctor moved to dismiss the indictment under both Federal Rule of Criminal Procedure 48(b) and the Due Process Clause of the Fifth Amendment, arguing that the government waited an unreasonable amount of time before bringing the prosecution. The district court denied the motion in an unwritten order.

A one-day trial was held on August 23, 2006. During the trial, the Government offered into evidence a tape-recording of the 911 call made by Yogi. The tape contained the entire exchange between Yogi and the 911 operator, set out here:

OPERATOR: BILOXI POLICE AND FIRE.

R. PROCTOR: CAN YOU HAVE A POLICE ON NINE AND MAIN I MEAN ON MAIN STREET IN FRONT OF INEZ PLEASE?

OPERATOR: WHAT'S GOING ON?

R. PROCTOR: WHAT'S GOING ON IS MY LITTLE BROTHER JUST TOOK A GUN OUT OF MY CAR BELONG TO SOMEBODY ELSE AND SHOT IT IN THE GROUND

| | |
|---|---|
| | TWICE AND HE A CONVICTED FELON AND HIS NAME IS KENDRICK. |
| OPERATOR: | HE SHOT IT IN THE GROUND TWICE? |
| R. PROCTOR: | YES MA'AM. TWICE. |
| OPERATOR: | AND IT'S YOUR BROTHER? |
| R. PROCTOR: | YES MY LITTLE BROTHER. |
| OPERATOR: | WHERE'S HE AT NOW? |
| R. PROCTOR: | I DON'T KNOW I THINK HE'S UPSTAIRS IN THIS CLUB, BUT Y'ALL KNOW HIM REAL GOOD HIS NAME IS KENDRICK PROCTOR. |
| OPERATOR: | JIMMY PROCTOR? |
| R. PROCTOR: | KENDRICK PROCTOR. |
| OPERATOR: | KENDRICK PROCTOR? |
| R. PROCTOR: | YES MA'AM, HE'S BEEN IN THE PENITENTIARY SO HE AIN'T SUPPOSED TO POSSESS NO GUN, IT WASN'T NONE OF MY GUN . . . |
| OPERATOR: | AND HE'S IN THE CLUB WITH THE GUN NOW? |
| R. PROCTOR: | YES MA'AM HE WAS IN THE CLUB. |
| OPERATOR: | WHAT'S HE WEARING? |
| R. PROCTOR: | UM, HE HAD A CAP, A WHITE SHIRT, AND I THINK SOME BROWN PANTS, THEY KNOW HIM. |
| OPERATOR: | OKAY, WHY DID HE TAKE THE GUN OUT, DO YOU KNOW? |
| R. PROCTOR: | HE TOOK THE GUN OUT OF MY CAR. |
| OPERATOR: | WHY? |
| R. PROCTOR: | BECAUSE THAT MY LITTLE BROTHER, YOU KNOW HE COME TO MY CAR AND HE JUST TOOK THE GUN AND I SAID MAN, GIVE THAT MAN THAT GUN BACK AND HE SAY HOW 'BOUT ME I THOUGHT YOU AND ME WERE BROTHERS HE TALKING ABOUT BITCH BROTHERS, AND SHOT IT IN THE GROUND TWICE. |

| OPERATOR: | OKAY, AND YOU DON'T KNOW WHY, HE WASN'T GOING AFTER SOMEBODY, WAS HE? |
| --- | --- |
| R. PROCTOR: | MA'AM, HE JUST, I DON'T KNOW WHAT'S WRONG WITH HIM, MA'AM, MY MOMMA THINK HE'S ON COCAINE, SO THAT'S PROBABLY WHAT'S WRONG WITH HIM, BUT HE A CONVICTED FELON, HE AIN'T SUPPOSED TO POSSESS NO GUN. |
| OPERATOR: | OKAY, ALRIGHT, WELL THEY'RE ON THE . . . |
| R. PROCTOR: | AND HE SHOT IT IN THE GROUND TWICE AND I CAN SHOW WHERE HE SHOT IT. |
| OPERATOR: | WHAT'S YOUR NAME? |
| R. PROCTOR: | OKAY MY NAME IS RODRIGUEZ PROCTOR. |
| OPERATOR: | RODRIGUEZ?  OKAY, WELL STAY OUTSIDE AND WAIT FOR THE POLICE, OKAY? |
| R. PROCTOR: | YES MA'AM. |
| OPERATOR: | ALRIGHT. |
| R. PROCTOR: | OKAY. |
| OPERATOR: | THANK YOU.  BYE. |

Yogi was not called as a witness at trial.  Proctor made a timely objection to the introduction of the tape-recording based on the Confrontation Clause, arguing that the 911 call was testimonial under Crawford v. Washington, 541 U.S. 36 (2004).  The district court overruled the objection.  The jury found Proctor guilty on all counts, and the district court sentenced him to 135 months of imprisonment.

## II.   DISCUSSION

Proctor appeals both the denial of his motion to dismiss the indictment[1] and the admission of the 911 call as evidence at trial.

---

[1] Proctor concedes that Rule 48(b) applies only to post-arrest delay in bringing a case to trial; it does not apply to pre-indictment delay if the defendant has not been arrested.  See United States v. Stumpf, 827 F.2d 1027, 1029 (5th Cir. 1987).  Thus, on appeal, Proctor bases his request for relief on only the Due Process Clause of the Fifth Amendment.

A.    Motion to Dismiss the Indictment

Proctor's first point of error is that the Government's May 2006 indictment for crimes that occurred four years and nine months earlier violates his Fifth Amendment due process rights and, therefore, the district court should have granted his motion to dismiss the indictment. The district court's findings of fact are reviewed for clear error; its conclusions of law are reviewed de novo. United States v. Avants, 367 F.3d 433, 441 (5th Cir. 2004). For preindictment delay to violate due process, the accused must show both that the delay "was intentionally brought about by the Government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other bad faith purpose" and that the delay "caused actual, substantial prejudice to his defense." United States v. Crouch, 84 F.3d 1497, 1523 (5th Cir. 1996) (en banc).

Proctor argues that the Government's bad faith "is evident from the fact that the Government had all the evidence to prosecute" approximately four years and nine months before filing the indictment. Proctor cannot rely solely on the passage of time to establish bad faith or improper purpose. See, e.g. Crouch, 84 F.3d at 1510 (the statute of limitations, not the due process clause, provides the primary protection against pre-indictment delay). Instead, the Due Process Clause requires dismissal of an indictment filed within the statute of limitations only if the defendant shows that the Government's delay in bringing the indictment was a deliberate device to gain an advantage. Id. at 1510. Proctor has failed to point to anything in the record that shows the Government delayed the indictment to gain such a tactical advantage, and we reject his invitation to infer bad faith simply from the fact of the delay.

In addition, Proctor has not shown that he was actually prejudiced by the pre-indictment delay. Proctor contends that he was prejudiced because his brother, Yogi, was no longer available to testify. However, Proctor does not

allege that Yogi's testimony would have been exculpatory or that it would have aided the defense. See United States v. Bezborn, 21 F.3d 62, 66 (5th Cir. 1994) (rejecting defendant's claim of prejudice from unavailability of a witness because of defendant's failure to show that the witness's testimony would have been exculpatory). Therefore, Proctor has failed to show he was actually prejudiced, and we reject his contention that the pre-indictment delay violated his right to due process under the Fifth Amendment.[2]

B.    Admission of Tape-Recording of 911 Call

Proctor also argues that the use of the tape-recorded 911 call at his trial was a violation of his Sixth Amendment right to confrontation under Crawford v. Washington, 541 U.S. 36 (2004). He asserts that the tape-recording contained inflammatory and highly prejudicial information that should have been excluded because it was testimonial in nature. Specifically, he contests the admission of the following statements made by Yogi: (1) Proctor "took the gun out of my car belong [sic] to someone else;" (2) "y'all know him real good;" (3) "he's been in the penitentiary;" and (4) "he's on cocaine." Because Proctor objected to the admission of the 911 tape on confrontation grounds, this court reviews his claim of error de novo. See, e.g., United States v. Fields, 483 F.3d 313, 326 (5th Cir. 2007).

The Sixth Amendment to the Constitution states that in all "criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. In Crawford v. Washington,

---

[2] Proctor alleges in his brief that the district court's denial of the motion in an unwritten order was "particularly erroneous in light of the fact that Mr. Proctor moved, in the alternative, for discovery on the issue of pre-indictment delay." This court has rejected the notion that an assertion of pre-indictment delay automatically triggers the right to discovery and a hearing. See United States v. Mulderig, 120 F.3d 534, 540 (5th Cir. 1997). We have held that "an in camera inspection by a district judge is a reasonable procedure and is protective of the defendant's rights." Id. (internal quotations and citations omitted). Proctor presents no argument to this court regarding the adequacy or inadequacy of any in camera inspection that may have been conducted.

the Supreme Court held that the right to confrontation bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53-54. The Court declined to provide a comprehensive definition of "testimonial," but noted that a testimonial statement "is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact" and "includes statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for later use at trial." Id. at 51-52 (citations omitted).

In Davis v. Washington, 126 S. Ct. 2266, 2276 (2006), the Supreme Court considered whether an interrogation that occurred during a 911 call produced testimonial statements. The Court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Id. Conversely, statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. The Court noted that a 911 call "is ordinarily not designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance." Id. However, the Court cautioned that a conversation which begins as an interrogation to determine the need for emergency assistance can "evolve into testimonial statements once that purpose has been achieved." Id. at 2277. The Court then examined the 911 call in question, and held that the trial court's admission of the 911 recording did not violate the Confrontation Clause. The Court noted that: (1) the caller was describing the events as they were happening; (2) the caller was facing an

ongoing emergency; (3) the nature of what was asked and answered was necessary to resolve the present emergency rather than learn what happened in the past; and (4) the caller's answers were frantic. In conclusion, the Court held that the circumstances of the interrogation on the 911 recording indicate that the caller was not testifying as a witness, but rather was enabling police assistance to meet an ongoing emergency. Id.

Viewing the facts of this case in light of Davis, Yogi's statements to the 911 operator were nontestimonial. Yogi's call to 911 was made immediately after Proctor grabbed the gun and fired it twice. During the course of the call, he recounts what just happened, gives a description of his brother, indicates his brother's previous criminal history, and the fact that his brother may be under the influence of drugs. All of these statements enabled the police to deal appropriately with the situation that was unfolding. The statements about Proctor's possession of a gun indicated Yogi's understanding that Proctor was armed and possibly dangerous. The information about Proctor's criminal history and possible drug use necessary for the police to respond appropriately to the emergency, as it allowed the police to determine "whether they would be encountering a violent felon." Id. at 2276. Proctor argues that the emergency had already passed, because he had run away with the weapon at the time of the 911 call and, therefore, the 911 conversation was testimonial. It is hard to reconcile this argument with the facts. During the 911 call, Yogi reported that he witnessed his brother, a felon possibly high on cocaine, run off with a loaded weapon into a nightclub. This was an ongoing emergency–not one that had passed. Proctor's retreat into the nightclub provided no assurances that he would not momentarily return to confront Yogi and Fairley. Further, Yogi could have reasonably feared that the people inside the nightclub were in danger. Overall, a reasonable viewing of the 911 call is that Yogi and the 911 operator were dealing with an ongoing emergency involving a dangerous felon, and that

the 911 operator's questions were related to the resolution of that emergency. Because the tape-recording of the 911 call is nontestimonial, it does not implicate Proctor's right to confrontation, and its admission was not in error. See United States v. Thomas, 453 F.3d 838, 844 (7th Cir. 2006) (concluding that tape-recording of 911 call from an anonymous caller is nontestimonial and, therefore, does not implicate the Confrontation Clause).

III.    CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.