COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales and Powell
Argued at Richmond, Virginia


KENNETH WESLEY MURRAY

MEMORANDUM OPINION[*] BY
v.        Record No. 1167-09-2          JUDGE RANDOLPH A. BEALES
                                        NOVEMBER 23, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Charles M. Stone, Judge Designate

J. Patterson Rogers, 3rd, for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


A jury convicted Kenneth Wesley Murray (appellant) of second-degree murder.[1]  At

appellant's trial, the trial court admitted an audiotape of a 911 telephone call made by the victim,

C.W.[2]  Appellant on appeal does not challenge the admissibility of the audiotape, which was played

for the jury.  However, he argues that the trial court erred when it permitted the jury to consider,

under the present sense impression exception to the hearsay rule, the truth of C.W.'s statements in

the audiotape.  Appellant contends that the trial court should have instructed the jury that the

audiotape was admitted only to establish that C.W. made a 911 call and that the statements made

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was charged with first-degree murder, but the jury convicted him of the
lesser-included offense of second-degree murder.

[2] We use initials for the victim in this opinion rather than her actual name in an attempt to
better protect the privacy of the decedent and her family.

during that call were not to be considered by the jury for their truth.[3] Disagreeing with appellant's argument, we affirm the conviction for second-degree murder for the following reasons.

## I. BACKGROUND

Appellant acknowledges killing C.W., his sister, during the early morning hours of March 31, 2008. At the time, appellant and C.W. lived next to each another in separate houses belonging to their family. C.W. maintained both houses, and she wanted to rent appellant's house to a paying tenant. Appellant had recently returned from a six-month stay at a drug treatment facility, and he did not want to move out of his house.

According to a neighbor who saw or heard the siblings several times on March 30, 2008, appellant and C.W. argued that day about C.W.'s plans for appellant's house, as well as on other matters. At one point, while the neighbor was at appellant's home, appellant asked what could be done to stop C.W. from throwing him out of the house. While the neighbor was still at appellant's house, C.W. came over and accused appellant of stealing her firewood. The neighbor walked C.W. back to her house next door at about 8:00 p.m.

Shortly after 10:00 p.m., C.W. called the 911 emergency operator to report that appellant was inside her house, that he had been drinking and taking drugs, and that he was verbally abusing her. However, C.W. indicated at the end of this 911 call that no police response was necessary because appellant was going back to his house.

Approximately twenty minutes later, C.W. called the 911 operator again, saying that appellant had returned. C.W. told the 911 operator, "[H]e's stealing my firewood." She also said,

---

[3] Alternatively, appellant argues under Hodges v. Commonwealth, 272 Va. 418, 634 S.E.2d 680 (2006), that the trial court should have given a limiting instruction informing the jury that C.W.'s statements were admitted only to establish her state of mind. An appeal was not granted on this issue, and, therefore, we do not address it. See Rule 5A:15; McLean v. Commonwealth, 30 Va. App. 322, 329, 516 S.E.2d 717, 720 (1999).

"[H]e's verbally abusing me" and "[H]e's threatening . . . to hit me."[4]  C.W. told the operator that appellant was outside her house and taking her firewood as they were talking, adding, "I don't know what he might do."  C.W. told the 911 operator that she had called because appellant was trespassing on her property, which was posted with a "No Trespassing" sign, and because appellant was threatening her.  "Oh yeah, he's threatening me," C.W. told the 911 operator.  "He's said he'll kill me."

Responding to C.W.'s second 911 call, Deputy Bowen arrived at C.W.'s home at about 11:00 p.m.  He met with appellant and C.W. under a carport between the two houses.  Appellant told Bowen that he was upset because C.W. was "kicking" him out of his house.  Appellant and C.W. then argued in front of Bowen.  After Bowen told C.W. to go back to her house, Bowen and appellant discussed appellant's drug problem.  Appellant acknowledged that he might have to leave the area to seek further rehabilitation.

At about 7:30 a.m. on the morning of March 31, 2008, appellant made a call to the 911 operator.  He told the operator that C.W. had broken into his house with a flashlight and knife and that he had killed her in response.  Deputy Spencer, who responded a short time later, found a flashlight and a knife on the floor of appellant's house.  He saw C.W.'s body on the floor.  Deputy Spencer believed C.W. had been dead for some time before he arrived at the house.

Appellant later told Detective Tribble that C.W. broke into his house at around midnight and attacked him with a large flashlight and a knife.  He claimed that he "avoided her blows" and "managed to disarm her" after two minutes.  Appellant told the detective that he then attempted to "steer" C.W. to the door, but she resisted.  In the struggle that ensued, appellant struck C.W. with the flashlight, pulled her to the floor, "clamped" his hands around her mouth and nose, and

---

[4] C.W. also told the 911 operator about appellant's stay at a drug treatment facility, about his need for further drug treatment, and about the dispute over the house where appellant was living.

"cut off her air" for three or four minutes until she "seemed subdued." Appellant also acknowledged taking a $50 check that C.W. had made out to Wal-Mart, stating that he had intended to "take and use a couple of her checks."

At appellant's trial on the murder charge, the Commonwealth offered an audiotape containing all three 911 calls – C.W.'s two calls from the night of March 30 and appellant's call from the morning of March 31. The audiotape was admitted into evidence and played for the jury without objection. After the audiotape was played, appellant's trial counsel, referring to C.W.'s second 911 call, said:

> I'd like the Court to admonish the jury that that's not for the truth
> of what [C.W.] said [on the tape]. It's just for the fact that she
> made the phone call. She makes a lot of allegations in the phone
> call.

The prosecutor argued that C.W.'s statements in her second 911 call were admissible for the truth of the matter asserted under the present sense impression doctrine. The trial court overruled appellant's objection without further argument by appellant's trial counsel.

II. ANALYSIS

Appellant argues that the trial court committed reversible error when it did not admonish the jury that the audiotape containing C.W.'s second 911 call was offered only for the purpose of establishing that the call was made – and not for the truth of the matters asserted by C.W. during that 911 call.[5] "Decisions regarding the admissibility of evidence 'lie within the trial court's

_____

[5] Appellant essentially sought a limiting instruction from the trial court. See Hanson v. Commonwealth, 14 Va. App. 173, 183, 416 S.E.2d 14, 20 (1992) (stating that a limiting instruction should be given to the jury when evidence is "admissible for one purpose, but inadmissible for another"). The Commonwealth contends that appellant's request for a limiting instruction was untimely under Rule 5A:18 because appellant's trial counsel sought the limiting instruction only *after* the audiotape containing C.W.'s second 911 call had been played for the jury. However, the Supreme Court's opinion in Simpson v. Commonwealth, 199 Va. 549, 100 S.E.2d 701 (1957), suggests that appellant's request for a limiting instruction, which occurred before the jury retired for its verdict, was not untimely. See id. at 554-55, 100 S.E.2d at 705 ("It appears that none of the cited cases lays down the principle that such an instruction must be

sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006) (quoting Breeden v. Commonwealth, 43 Va. App. 169, 184, 596 S.E.2d 563, 570 (2004)). An abuse of discretion occurs only when "'reasonable jurists could not differ'" that the trial court erred. Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (2005)).

The audiotape of C.W.'s second 911 call contained out-of-court statements from C.W. that were hearsay, given that the Commonwealth agrees that her statements were admitted for their truth. See Lawrence v. Commonwealth, 279 Va. 490, 497, 689 S.E.2d 748, 751 (2010) (defining hearsay as "an out of court statement offered to prove the truth of the matter asserted"). "Hearsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule." Id.

During the second 911 call, C.W. claimed, "he's threatening to hit me" and "he's said he'll kill me." Appellant argued that these two out-of-court statements were admissible only for the purpose of proving that the call had in fact been made – a "'limited, non-hearsay'" purpose for admitting the statements that required an appropriate limiting instruction to the jury.[6] Jones v. Commonwealth, 50 Va. App. 437, 451, 650 S.E.2d 859, 866 (2007) (quoting Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992)). Rejecting this argument, the

given at the time the evidence is offered, but they do postulate that the jury should be so instructed before retiring to consider their verdict."). Therefore, for the purpose of this appeal, we assume without deciding that appellant preserved his argument for appeal.

[6] C.W. made other statements during the second 911 call that were included in appellant's request for a limiting instruction to the jury – such as C.W.'s claim that appellant was stealing her firewood, that appellant needed further drug rehabilitation, and that the siblings were arguing over the house where appellant lived. These statements were cumulative of other, properly admitted trial evidence. Thus, any conceivable error in permitting the jury to consider the truth of these statements was harmless. See Sargent v. Commonwealth, 5 Va. App. 143, 154, 360 S.E.2d 895, 903 (1987).

trial court found that C.W.'s statements in the second 911 call, including these specific allegations, were admissible for the truth of the matter asserted under the present sense impression exception to the hearsay rule. Thus, the trial court ruled that no limiting instruction was needed.

"It is generally accepted that a statement accompanying and characterizing an act is admissible as a recognized exception to the hearsay rule. Virginia recognizes this type of statement as the 'present sense impression' exception to the hearsay rule." Clark v. Commonwealth, 14 Va. App. 1068, 1070, 421 S.E.2d 28, 30 (1992). "In order for the present sense impression exception to apply, three requirements must be satisfied: '(1) the declaration must have been contemporaneous with the act; (2) it must explain the act; and (3) it must be spontaneous.'" Wilder v. Commonwealth, 55 Va. App. 579, 587, 687 S.E.2d 542, 546 (2010) (quoting Clark, 14 Va. App. at 1070, 421 S.E.2d at 30).

Here, twenty minutes after calling the 911 operator to complain that appellant was intoxicated and verbally abusing her, C.W. called the 911 operator again, claiming appellant was again on her property without permission and was again threatening her. While she was on the telephone with the 911 operator, C.W. said that she was watching appellant, and she described his actions in the present tense. C.W. claimed, "he's *stealing* my firewood," "he's verbally *abusing* me," and "he's *threatening* . . . to hit me." (Emphasis added.) C.W. told the operator that she felt threatened by appellant, commenting, "I don't know what he might do." As C.W. described the situation that was going on at her house, she continued to feel threatened.

Near the conclusion of this second 911 call, C.W. said, "he's threatening me – he's said he'll kill me."[7] Although phrased somewhat differently from her claim about appellant's threat

---

[7] Although appellant's threat to kill C.W. was relevant in determining whether appellant committed a premeditated murder, we note that the jury did not convict appellant of first-degree murder – but instead convicted him of second-degree murder. Premeditation is not an element of

- 6 -

to hit her, this statement, when viewed in the context of the entire second 911 call, described a threat to kill her that was made very close to the time of the call – and her statement clearly did not describe a threat from well in the past. Thus, C.W.'s description of appellant's threat to kill her satisfied the timing requirement of the present sense impression exception because it described a contemporaneous or nearly contemporaneous act. See Foley v. Commonwealth, 8 Va. App. 149, 161-62, 379 S.E.2d 915, 922 (1989) (noting that the present sense impression exception's "'requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory'" (quoting Booth v. State, 508 A.2d 976, 980 (Md. 1986))); see also Wilder, 55 Va. App. at 588, 687 S.E.2d at 546 ("Contrary to Wilder's contention, from the facts in the record, the trial court could have properly concluded that the statements contained in the tape recording were made contemporaneously or near contemporaneously with the acts they describe.").

These statements by C.W. were also spontaneous, as they reflected C.W.'s "personal perceptions at that time" and were not "a narrative reflection of a past event." Foley, 8 Va. App. at 164, 379 S.E.2d at 923. Thus, C.W.'s statements were unlike the informant's statements in Arnold v. Commonwealth, 4 Va. App. 275, 356 S.E.2d 847 (1987), where an informant's recorded description of a drug transaction lacked spontaneity under the present sense impression because the tape recording was made after the drug transaction had taken place. Id. at 277, 282, 356 S.E.2d at 848, 851. The informant's summary in Arnold lacked the requisite spontaneity because it described "a designed plan" to conduct a controlled drug transaction. Id. at 282, 356 S.E.2d at 851. In contrast, C.W. did not plan or anticipate her second 911 call. She made the

---

second-degree murder, and the jury did not find that appellant's killing of C.W. was premeditated. Thus, admission of these statements in order to prove premeditation was clearly harmless because, even after considering this evidence from the 911 call for the truth of the matters stated in the call, the jury concluded that appellant did not premeditate the murder.

call because appellant was trespassing on her property and threatening her. Thus, her statements about appellant's threats were spontaneous because they were "'made without time to reflect or fabricate'" and "'related to the circumstances of the perceived occurrence.'" Wilder, 55 Va. App. at 589, 687 S.E.2d at 546 (quoting Black's Law Dictionary 1438 (8th ed. 2004)).

Therefore, we hold that C.W.'s statements in her second 911 call – that appellant threatened to hit her and threatened to kill her – fall under the present sense impression exception to the hearsay rule. Accordingly, the trial court did not abuse its discretion when it rejected appellant's request to give a limiting instruction to the jury that C.W.'s statements in the second 911 call were admissible only for the limited purpose of establishing that this call had in fact been made.

### III. CONCLUSION

The trial court was not required to give appellant's limiting instruction concerning C.W.'s second 911 call. Accordingly, for the foregoing reasons, we affirm appellant's conviction for second-degree murder.

Affirmed.