VAN NORTWICK, J.
Gregory L. London appeals his conviction for aggravated battery with great bodily harm, disability or disfigurement arguing that the trial court erred in admitting into evidence the recording of a 911 call. Appellant asserts that allowing the recording into evidence deprived him of his right of confrontation under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We conclude that the statements made to the 911 operator were non-testimonial because the statements were made to assist the authorities in addressing an ongoing emergency. Accordingly, we affirm.
*358 Prior to trial, the State indicated its intention to introduce the recording of a portion of the 911 call made by Ebony London, appellant’s daughter and the victim’s niece. The State had not been able to obtain service on Ms. London and she was not going to testify at trial. The State asserted that the 911 recording would not violate Crawford because the statements on the recording were not testimonial and enabled the police to meet an ongoing emergency. Defense counsel argued that, to the extent Ms. London told the 911 operator that her aunt was hurt and bleeding, her statements were not testimonial. Defense counsel contended, however, that the identification of Ms. London’s father was testimonial. The court ruled that the recording was admissible.
The victim, Marjorie Roberson, testified that on March 27, 2010, she had taken Ms. London to her home. While there, appellant rode up on his bicycle and he and Roberson engaged in a conversation about Ms. London and her boyfriend. Appellant expressed his opinion that the boyfriend was dangerous. Appellant said he was going to “mess up” Roberson if Ms. London got hurt. When Roberson responded that she was going to help his daughter, appellant hit her in the face and knocked her to the ground. She sustained multiple fractures to her face.
During Roberson’s testimony, the prosecutor played the recording of Ms. London’s 911 call, as follows:
THE 911 OPERATOR: 911, how may I help you?
MS. LONDON: My auntie is hurt bad. (Inaudible)
THE 911 OPERATOR: What’s the address, ma’am? What’s the address?
MS. LONDON: 1125 Southeast Second Avenue. Please come. It’s really bad.
THE 911 OPERATOR: Listen to me. (Inaudible)
MS. LONDON: Oh, God. (Cries)
THE 911 OPERATOR: Yes, ma’am. Calm down and give me the address. Okay. Come on, you can do it.
MS. LONDON: 1125 Southeast Second Avenue.
THE 911 OPERATOR: What’s the apartment?
MS. LONDON: It’s a house.
THE 911 OPERATOR: What’s the telephone number you’re calling from, area code first.
MS.' LONDON: 352-792-5682. My dad’s a punk ass bitch. You need to help me. My auntie is on the ground, just bleeding.
THE 911 OPERATOR: You need to tell me what happened.
MS. LONDON: My auntie was talking to him and I turned around and she was on the ground. She was talking to my dad. His name is Gregory London.
THE 911 OPERATOR: Listen, ma’am, I’m trying to understand what happened. Did somebody assault your daughter?
MS. LONDON: No, somebody assaulted my auntie. My father assaulted her, he hit her in her face and her nose is pouring blood.
THE 911 OPERATOR: Stay on the line with me, okay?
MS. LONDON: Yes, ma’am.
THE 911 OPERATOR: Your aunt was assaulted?
MS. LONDON: Yeah, she’s bleeding. The sidewalk is full of blood.
THE 911 OPERATOR: We’re getting you some help. Okay. Hang with me, okay?
MS. LONDON: Okay.
THE 911 OPERATOR: We’re going to send an ambulance to her. Okay?
MS. LONDON: Yes, ma’am.
*359 Roberson testified that she asked her niece to make the 911 call.
After the State rested, the defense rested without witnesses. The jury returned a verdict finding appellant guilty as charged.
On appeal, as below, appellant argues that the recording was in part testimonial. After obtaining the address and telephone number and learning there was a need for medical assistance, the 911 operator asked “what happened,” which elicited Ms. London’s identification of appellant. Appellant asserts that this question turned the exchange into an interrogation for the purpose of gathering evidence, and the responses to the 911 operator thereafter were testimonial. We do not agree.
The Sixth Amendment’s Confrontation Clause provides that, “[i]n all criminal prosecutions the accused shall enjoy the right ... to be confronted with witnesses against him.” U.S. Const., Amend. VI. In Crawford, 541 U.S. at 68, 124 S.Ct. 1354, the Supreme Court held the admission of a hearsay statement made by a declarant not available to testify at trial violates the Sixth Amendment if (1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant. See also State v. Lopez, 974 So.2d 340, 345 (Fla.2008). There is no question here that appellant had no opportunity to cross-examine Ms. London because she was unavailable to testify at trial. Accordingly, we must determine whether the content of the 911 tape is “testimonial” and thus subject to the requirements of the Sixth Amendment Confrontation Clause.
The United States Supreme Court explained the distinction between testimonial and non-testimony statements in Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), as follows:
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
In the context of a 911 call, the Davis court found it significant that “the nature of what was asked and answered ..., again viewed objectively, was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn (as in Crawford ) what had happened in the past.” Id. at 827, 126 S.Ct. 2266 (emphasis theirs). Further, under Davis, a 911 operator’s questioning about the identity of an assailant does not, by itself, make the answer testimonial. As Davis explained, resolving the present emergency may require the operator “to establish the identity of the assailant, so that the dispatched officers might know whether they are encountering a violent felon.” Id. (citation omitted). Certainly, a conversation that begins as an interrogation to establish the need for emergency assistance can evolve into testimonial statements once the operator has obtained the information necessary to resolve the emergency. Id. at 828-29.
The 911 recording here was clearly non-testimonial. All of Ms. London’s statements on the recording dealt with the ongoing emergency and allowed the 911 operator to deal appropriately with the situation. Ms. London’s identification of appellant as the assailant was in response to a question asked for the purpose of providing assistance to the emergency. At the time of the statement, the operator could not be certain what to inform emergency responders, aside from *360 the fact that a woman was suffering blood loss. The circumstances could have been anything from a nosebleed due to a blow to the face, to a shooting, to a bad fall. All of these occurrences would have required different treatments and priorities for the emergency responders. The operator was not asking questions to build evidence for a criminal case. At the time of the question, there was no reason for the operator to even suspect that a criminal action had taken place. See Williams v. State, 967 So.2d 735, 747 n. 11 (Fla.2007) (observing that the victim “was seeking emergency medical assistance for her life-threatening injuries” and therefore her responses were not testimonial); and U.S. v. Proctor, 505 F.3d 366, 371 (5th Cir.2007) (Recording of 911 call was non-testimonial because the “statements enabled the police to deal appropriately with the situation that was unfolding... .”).
AFFIRMED.
BENTON, C.J., and SWANSON, J., concur.