COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Malveaux and Chaney
Argued by videoconference


AHMAD HALIM MUBDI

                                                                MEMORANDUM OPINION[*] BY
v.       Record No. 0071-23-3              JUDGE MARY BENNETT MALVEAUX
                                                           MAY 7, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

Brendan D. O'Toole (Hannah R. Gourdie; Robert E. Dean; Benjamin
Sharpe; Williams Mullen; Rob Dean Law, on briefs), for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Ahmad Halim Mubdi ("appellant") of

first-degree murder, in violation of Code § 18.2-32, use of a firearm in the commission of murder, in

violation of Code § 18.2-53.1, and possessing a firearm as a convicted felon, in violation of Code

§ 18.2-308.2.[1]  Appellant argues that the trial court erred in admitting into evidence a 911 call and

certain videos, as well as finding sufficient evidence to convict him of all three offenses.  Finding no

error, we affirm the judgment of the trial court.

## I.  BACKGROUND

"On appeal, we view the record in the light most favorable to the Commonwealth

because it was the prevailing party below."  *Delp v. Commonwealth*, 72 Va. App. 227, 230

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The trial court adjudicated the firearm possession charge in a bench trial that occurred
simultaneously with the jury trial.

(2020). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

In the early morning hours of September 12, 2020, appellant was at 1st Down Sports Lounge, a bar in the city of Roanoke, with a group of women. As the bar closed down at about 1:30 a.m., a group of people, including those women, began arguing and physically fighting outside and across the street from the bar. Initially, appellant attempted to break up the fight and encouraged the women to leave.

William Caldwell and Paul Andrews, the bar's security guards, also attempted to break up the fight. Andrews saw a man retrieve a firearm from a car, and Caldwell yelled, "gun, gun, gun." Appellant then told Andrews to "put those guns up, put them guns up because we do that real gun play shit around here." Andrews told appellant to leave. During this interaction, both Andrews and Caldwell had clear views of appellant's face and clothing.

After initially breaking apart, the fighting continued outside the bar. At some point between the two fights, Andrews saw the man who had retrieved a firearm from a car give the firearm to appellant. Derrick Bostick, whom Caldwell recognized as a regular at the bar, and appellant both became actively involved in the second fight.

Caldwell and Andrews broke up the second fight, and the crowd began to disperse. Caldwell urged Bostick to get into his car. As Bostick walked around his car to get inside, appellant followed behind Bostick, raised a gun to eye-level with Bostick, and shot Bostick in the front of his head. Andrews was among the crowd, trying to get to the car, at the time of the shooting. He did not see the shooting, but after hearing multiple shots, Andrews saw appellant holding a firearm.

Caldwell was standing around the other side of the car about five feet away from the shooting. He saw appellant raise a gun in his right hand, about eye-level with Bostick, and pull the trigger. He also saw a muzzle flash that went off towards Bostick's head.

Bostick suffered multiple gunshot wounds to the head, pelvis, left shoulder, and left thumb. The wounds to his head and pelvis caused his death.

Several people in the crowd were filming the fight on their cell phones, capturing the fight and the shooting with the corresponding muzzle flash. The Commonwealth introduced these videos into evidence at trial. Caldwell identified himself in the videos and photograph stills. Although he did not film the videos himself, he testified that he was present that night and "saw everything." He acknowledged that, though his vantage point differed from that of the camera in some instances, the videos were fair and accurate depictions of the events. Andrews also identified himself in several photos and videos and testified that the videos were fair and accurate depictions of the events. Caldwell and Andrews both identified appellant in the videos.

Police arrived at the scene of the shooting at 1:53 a.m. Officer Alger testified that people were "yelling and screaming" as well as filming with cell phones or fleeing the scene. Caldwell gave Alger a description of the shooter but not the shooter's name.

Jade Bryant called 911 at approximately 1:55 a.m. She stated that someone had been shot and killed at 1st Down. Her tone of voice was frantic and upset during the call. She asked the operator to "please help me out" and said, "I know who it was, I know who it was." Bryant told the operator that she was leaving the scene but knew who committed the shooting. She then said, "he's dead, oh my god." The operator asked for the name of the shooter, and Bryant answered that he goes by "cocaine."[2] When asked if "cocaine" was still there, Bryant answered, "yes," then "I don't

---

[2] Police later connected the alias "cocaine" to appellant.

- 3 -

know, I don't know." She described the shooter as having appellant's appearance and clothing as seen in the videos. Bryant refused to provide the 911 operator with her name.

At trial, appellant objected to the introduction of the 911 call on Sixth Amendment confrontation grounds. The trial court overruled his objection. Appellant also objected to the introduction of two of the videos: one that showed appellant holding a gun and walking toward Bostick's car, the other that showed the second fight at the side of Bostick's car and the crowd retreating at the sound of gunshots. Appellant argued that Caldwell and Andrews's testimony was not sufficient to authenticate the videos. The trial court overruled appellant's objections.

At the close of the Commonwealth's evidence, appellant made a motion to strike, arguing that the evidence was insufficient to prove that appellant was the shooter and that the killing was premeditated, and asserting that necessity justified his possession of a firearm as a convicted felon. Appellant renewed his motion after presenting his own evidence. At the conclusion of all the evidence, the jury found appellant guilty of first-degree murder and using a firearm to kill Bostick.[3] The trial court then found appellant guilty of possessing a firearm after having been convicted of a violent felony.

This appeal followed.

## II. ANALYSIS

### A. Video Authentication

Appellant asserts that the trial court erred in denying his motion to exclude two of the cell phone videos, arguing that the videos were not properly authenticated.

---

[3] Appellant argues that, because his conviction for the predicate offense of murder should be overturned on a sufficiency basis, the evidence was also insufficient to establish he used a firearm to commit a felony. Because we find that the evidence was sufficient to convict appellant of first-degree murder, and to establish that he used a firearm, we do not address the merits of this argument.

- 4 -

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Adjei v. Commonwealth*, 63 Va. App. 727, 737 (2014) (alteration in original) (quoting *Beck v. Commonwealth*, 253 Va. 373, 384-85 (1997)).  A reviewing court can conclude that "an abuse of discretion has occurred" only in cases in which "reasonable jurists could not differ" about the correct result.  *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).  "[B]y definition," however, a trial court "abuses its discretion when it makes an error of law."  *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)).

When a party offers a video into evidence, the video must be authenticated.  *See Brooks v. Commonwealth*, 15 Va. App. 407, 410 (1992).  "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims."  Va. R. Evid. 2:901.  Videos are admissible under the same principles as photographs.  *Bennett v. Commonwealth*, 69 Va. App. 475, 487 (2018).  The test for admission is an "either/or test."  *Id.*  "The content of the video is admissible *either* to illustrate a witness' [sic] testimony *or* to serve as an 'independent silent witness' of matters depicted in the video."  *Id.* at 487-88 (quoting *Bailey v. Commonwealth*, 259 Va. 723, 738 (2000)).  Under the former admissibility test, a video that has been "verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence," and it "need not be proved" by the individual who made it.  *Bailey*, 259 Va. at 738 (quoting *Ferguson v. Commonwealth*, 212 Va. 745, 746, *cert. denied*, 409 U.S. 861 (1972)); *see also Pittman v. Commonwealth*, No. 0681-22-1, slip op. at 18 (Va. Ct. App. Apr. 25, 2023) ("Virginia case law . . . allows a witness to authenticate the contents of a

video . . . simply based on the fact that he recognizes certain key components of a video, thus establishing the requisite indicia of reliability to satisfy the requirements of Rule 2:901.").

We conclude that the trial court did not abuse its discretion in denying appellant's motion to exclude the videos, because the videos were properly authenticated by Caldwell and Andrews's testimony. The Commonwealth asserted that the videos depicted the events of the early morning hours of September 12, 2020, the same events that Caldwell and Andrews described. Caldwell and Andrews identified themselves, appellant, and the victim in the videos, and affirmed that the videos fairly and accurately represented what they observed on that date. Appellant argues, however, that due to the lack of testimony establishing how the videos were made, who made them, and their chain of custody, the videos could not serve as a "silent witness." But when a person who witnessed the events in a video testifies that it accurately represents what took place, it is not admitted under a silent witness theory, and thus the testimony of its maker is not required. *See Bailey*, 259 Va. at 738. The contested videos were not introduced as independent silent witnesses, but rather to illustrate Caldwell and Andrew's eyewitness testimony. Accordingly, the videos were properly authenticated, and the trial court did not abuse its discretion in admitting them.

### B. The 911 Call

Appellant next argues that the admission of Bryant's 911 call violated his Sixth Amendment confrontation rights.[4] The Sixth Amendment's Confrontation Clause "guarantees that a criminal

---

[4] Appellant's assignment of error also asserts that the 911 call was inadmissible hearsay, but appellant offers no argument or caselaw to support this contention. An appellant's opening brief must contain "[t]he standard of review and argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e). "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008), *vacated in part on other grounds*, 279 Va. 52 (2010)). Because appellant has failed to provide any standard of review, authorities, or argument related to the hearsay portion of his assignment of error, we do not consider that issue. We further note that, even if we were able to reach the merits of a hearsay

defendant will have the opportunity 'to be confronted with the witnesses against him.'" *Cody v. Commonwealth*, 68 Va. App. 638, 657 (2018) (quoting U.S. Const. amend. VI). But "the Confrontation Clause applies only to 'testimonial' statements." *Id.* "[W]e review *de novo* whether a particular category of proffered evidence is 'testimonial hearsay.'" *Caison v. Commonwealth*, 52 Va. App. 423, 434 (2008) (quoting *Jasper v. Commonwealth*, 49 Va. App. 749, 755 (2007)). Testimonial statements are the "sort [that] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). When determining whether a statement is testimonial, "we objectively evaluate all relevant circumstances in which the encounter occur[ed] and the statements and actions of the parties." *Adjei*, 63 Va. App. at 744 (alteration in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 359 (2011)). The issue is whether the statement was made with the primary purpose of creating "a substitute for trial testimony." *Canada v. Commonwealth*, 75 Va. App. 367, 383 (2022).

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822. If there is no such ongoing emergency and the primary purpose of the interrogation is to "establish or prove past events potentially relevant to later criminal prosecution," then the statements are testimonial. *Id.* "[W]e objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties" to make this determination. *Bryant*, 562 U.S. at 359. Relevant factors include whether the declarant's statements are "about current events as they [a]re actually happening," whether a "reasonable listener" would "conclude that the declarant was facing an

---

argument, Bryant's call clearly falls within the excited utterance exception to the rule against hearsay. *See, e.g.*, *Goins v. Commonwealth*, 251 Va. 442, 460 (1996); *Esser v. Commonwealth*, 38 Va. App. 520, 525 (2002).

ongoing emergency," whether "the elicited statements were necessary to be able to resolve the present emergency" or instead learn about past events, and whether the statements were "frantic" or made in "an environment that was neither tranquil nor safe." *Wilder v. Commonwealth*, 55 Va. App. 579, 590-91 (2010) (quoting *United States v. Cadieux*, 500 F.3d 37, 41 (1st Cir. 2007)).

Here, Bryant called 911 in a frantic, distressed state at 1:55 a.m., two minutes after the police first reached the scene of the shooting. During the three-minute call, she frequently exclaimed "oh my god" and gasped. After quickly stating that someone was shot and killed at 1st Down, she urged the responder to "please help." Bryant ignored the 911 operator's questions, instead repeating, "I know who it was, I know who it was." When Bryant said that she was leaving the scene, the operator asked her to wait and speak with law enforcement. Only after Bryant repeated multiple times that she knew who it was did the operator inquire further about the victim's identity. In response to the operator's questions, Bryant answered that the shooter was still on the scene and provided his physical description. At the end of the call, the operator confirmed that Bryant witnessed the shooting and tried to get her contact information, but she refused.

Based on these circumstances, we conclude that the trial court did not abuse its discretion in finding that Bryant's statements during the 911 call were nontestimonial because they were in response to an ongoing emergency. Bryant's demeanor and tone on the call was panicked and she immediately asked for help. She called because of a shooting at a public place in which Bryant believed somebody already died. During the call, Bryant indicated that she knew the identity of the shooter and that the shooter was still present at the scene to her knowledge. The 911 operator's questions about his identity and physical description were not objectively designed to create trial testimony, but were instead a response to an ongoing emergency situation

with an armed shooter still in the area, intended to discover the identity of the shooter and quell the threat to the public and responding personnel.

Appellant argues that because police were already on scene and the shooting was over, that there was no longer an ongoing emergency. But "[a]n assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Bryant*, 562 U.S. at 363. In addition, the use of a firearm elevates the danger because physical separation will not be sufficient to establish safety, particularly when the shooter's whereabouts are unknown. *See id.* at 372-74. And "[a]n emergency does not last only for the time between when the assailant pulls the trigger and the bullet hits the victim." *Id.* at 373. Here, when police arrived at the chaotic scene, groups of people remained nearby notwithstanding the shooting that had just occurred. Officers did not know the identity of the shooter or if there were risks of further violence. Even with police already on scene, the emergency was ongoing, and Bryant's statements on the 911 call reflect that continuing risk.

Appellant relies on *Wilder* in arguing that the call was testimonial, but his reliance is misplaced. The 911 caller in *Wilder* was at no risk of immediate physical harm; he called while watching a non-violent theft, and the perpetrators did not know the caller was present. 55 Va. App. at 591. This Court noted in *Wilder* that "in every other federal and state case that has previously confronted this issue and found the challenged statement to be nontestimonial, the facts and circumstances of the case indicated an immediate or imminent danger to the declarant, a third person or the public generally." *Id.* at 591-92. The caller in *Wilder* was giving authorities facts that could be used in a later prosecution; he was calling to report a crime and was not motivated by concern for his own safety.

In contrast to *Wilder*, this case involved an unknown shooter who had opened fire in a public crowd and remained at large, and the violence could have continued. Bryant indicated that she was leaving the scene, a fact that, when combined with her plea to "please help [her] out," showed that she presently feared immediate harm to herself. Bryant also told the 911 operator that the shooter was still on the scene, indicating the present and imminent nature of the danger to herself and the public generally. Indeed, Officer Alger, who arrived on the scene only minutes before Bryant's call, testified that people were still "yelling and screaming." *See Caison*, 52 Va. App. at 436 (finding an ongoing emergency based upon not only the life-threatening condition of the stabbing victim, but also the continued risk that the perpetrator would return and inflict additional harm). Accordingly, we do not disturb the trial court's decision to admit the 911 call recording into evidence, as it was nontestimonial and thus its admission did not violate appellant's confrontation rights under the Sixth Amendment.

### C. Sufficiency of the Evidence for First-Degree Murder

Appellant argues that the trial court erred in finding sufficient evidence of malice and premeditation to support his conviction of first-degree murder.[5]

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). The question on appeal is whether "any rational trier

---

[5] At oral argument, appellant asserted for the first time that there is "undisputed evidence in the record that there were other shooters at this scene." But neither his assignments of error nor his arguments on brief raise this issue. "Only assignments of error listed in the brief will be noticed by this Court." Rule 5A:20(c)(1); *Canales v. Commonwealth*, 78 Va. App. 353, 363 (2023) (declining to consider an argument that was not encompassed within appellant's assignment of error). "Further, this Court will not consider an argument presented for the first time at oral argument." *Stokes v. Commonwealth*, 61 Va. App. 388, 397 (2013). Accordingly, we do not consider appellant's argument related to the possibility of multiple shooters.

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Murder is a homicide committed with malice, which may be either express or implied. *Edwards v. Commonwealth*, 68 Va. App. 284, 297 (2017). Malice exists "in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). Malice "may be inferred 'from the deliberate use of a deadly weapon unless, from all the evidence,' there is reasonable doubt as to whether malice existed." *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015) (quoting *Avent v. Commonwealth*, 279 Va. 175, 201-02 (2010)). That inference is "bolster[ed]" by "[t]aking the steps necessary to locate and obtain a weapon." *Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994).

In this case, the evidence in the record was sufficient to establish malice. Appellant was not armed with a firearm throughout the entire event; instead, he obtained a gun after warning the security officers that "we do that real gun play shit around here." Appellant argues that his actions were necessary for self-defense, predicated on the multiple nearby fights. But at the time of the shooting, Bostick was trying to reenter his car to leave the scene and was not engaged in any active conflicts or fights. Appellant, on the other hand, had been told to leave after the first fight dispersed and chose instead to arm himself and reenter the fray. Appellant followed Bostick to his car, raised a firearm, and shot Bostick. It was reasonable for the jury to conclude that appellant's actions were the result of ill will, because Bostick was not actively engaged in the fight or

displaying aggression aimed at appellant.  And the inference of malice, borne from appellant's deliberate use of a deadly weapon, is bolstered by the fact that appellant took the necessary steps to obtain that weapon from where it was stored away in a car.  Therefore, the evidence was sufficient to establish beyond a reasonable doubt that appellant acted with malice.

We also conclude that the evidence was sufficient to establish premeditation.  In Virginia, malicious homicide rises to first-degree murder only if the Commonwealth proves the homicide was willful, deliberate, and premeditated.  Code § 18.2-32; *see Willis v. Commonwealth*, 37 Va. App. 224, 230 (2001).  "Premeditated murder . . . contemplates: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent."  *Fields v. Commonwealth*, 73 Va. App. 652, 674 (2021) (alteration in original) (quoting *Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989)).  That reasoning process need not be lengthy; the specific intent to kill "may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill."  *Rhodes*, 238 Va. at 485 (quoting *Giarratano v. Commonwealth*, 220 Va. 1064, 1074 (1980)); *see also Akers v. Commonwealth*, 216 Va. 40, 48 (1975) ("It is the will and purpose to kill, not necessarily the interval of time, which determine the grade of the offense.").  "[E]vidence of a mortal wound inflicted by a deadly weapon with little or no provocation creates an inference from which the trier of fact may conclude that the killer acted with premeditation."  *Morris*, 17 Va. App. at 578.

The Commonwealth may prove intent, including premeditation in a first-degree murder case, by circumstantial evidence.  *See, e.g.*, *Fields*, 73 Va. App. at 674 (noting that a "combination of circumstantial factors may be sufficient" to prove premeditation and formation of intent to kill (quoting *Aldridge v. Commonwealth*, 44 Va. App. 618, 655 (2004))).  In deciding whether premeditation exists, the jury may consider a combination of factors, including the

brutality of the attack and whether more than one blow was struck, the disparity in size and strength between the defendant and the victim, concealment of the victim's body, and the defendant's lack of remorse and efforts to avoid detection. *Epperly v. Commonwealth*, 224 Va. 214, 232 (1982). But the presence of "each and every factor mentioned in *Epperly*" is not essential to the application of the rule regulating the use of circumstantial evidence to prove premeditation. *Rhodes*, 238 Va. at 487. Rather, we will

> affirm a conviction of premeditated murder, even though based upon wholly circumstantial evidence, whenever we can say that the reasonable import of such evidence, considered as a whole, is sufficient to show beyond a reasonable doubt that the accused was the criminal agent and that he acted with a premeditated intent to kill.

*Id.*

The same evidence that proves malice here also establishes premeditation. Appellant armed himself with a deadly weapon and followed behind Bostick while Bostick was attempting to leave the scene. Appellant raised the gun and shot Bostick in the head at extremely close range. *See Jackson v. Virginia*, 443 U.S. 307, 325 (1979) (finding premeditation when the defendant shot the victim "at close, and thus predictably fatal, range"); *Schmitt v. Commonwealth*, 262 Va. 127, 143 (2001) (finding premeditation when the defendant shot the victim at close range). What is more, before appellant was even observed with a firearm, he told Andrews that "we do that real gun play shit around here." Appellant's use of the first person demonstrates his own willingness to engage in "real gun play," a phrase that a factfinder could reasonably interpret to include shooting at, and even killing, other people. This statement plainly evidences appellant's state of mind in deliberately seeking out a deadly weapon: he intended to use it. Further, there was no evidence that Bostick provoked appellant or that Bostick was doing anything other than trying to leave the scene. Considering all the circumstances in total, the

evidence supported a finding that appellant's acts demonstrated that the homicide was committed with premeditation.[6]

Because the evidence established that appellant acted with both malice and premeditation in the killing of Bostick, we hold that the evidence was sufficient to convict appellant for first-degree murder.[7]

### D. Sufficiency of the Evidence for Possession of a Firearm by a Convicted Felon

Appellant argues that the evidence was insufficient to support his conviction for possession of a firearm by a convicted felon because his possession was justified under the necessity defense.

The common law necessity defense "addresses the dilemma created when physical forces beyond the actor's control render 'illegal conduct the lesser of two evils.'" *Humphrey v.*

---

[6] Appellant asserts that *Rhodes* requires reversal because in that case our Supreme Court reversed a first-degree murder charge for lack of evidence establishing premeditation where at least three of the *Epperly* factors were not present. 238 Va. at 487. Appellant's argument ignores the Court's explicit admonition that all the *Epperly* factors need not be present to prove premeditation by circumstantial evidence. *Id.* Here, there was ample evidence of brutality: appellant shot Bostick four times, one of which was at close range in the front of his head. Evidence of the size disparity between appellant and Bostick would not have been especially probative, because appellant used a firearm to kill Bostick rather than physical force. And while appellant emphasizes the lack of evidence of motive, "motive is not an essential element of the crime" of first-degree murder, *Epperly*, 224 Va. at 232, and a first-degree murder charge may be upheld in a case where motive is not developed, as long as there is other evidence of premeditation, *Knight v. Commonwealth*, 41 Va. App. 617, 627-28 (2003). Given the ample evidence of brutality and other indicia of premeditation, the additional *Epperly* factors are not required to affirm appellant's first-degree murder conviction.

[7] Under this assignment of error, appellant also argues that "[i]f anything," appellant "sought to protect himself and others in the heat of passion." However, appellant cites no principles of law or authorities to support this contention. *See* Rule 5A:20(e); *Bartley*, 67 Va. App. at 744. Further, appellant's assignment of error does not encompass a heat of passion argument. An appellant's brief must contain assignments of error that list "the specific errors in the rulings below . . . upon which the party intends to rely." Rule 5A:20(c). "This Court is limited to reviewing the assignments of error presented by the litigant." *Banks*, 67 Va. App. at 289. "[W]e do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error." *Id.* at 290. Accordingly, we do not consider appellant's heat of passion argument here.

*Commonwealth*, 37 Va. App. 36, 45 (2001) (quoting *Buckley v. City of Falls Church*, 7 Va. App. 32, 33 (1988)).  The necessity defense has three essential elements: "(1) a reasonable belief that the action was necessary to avoid an imminent threatened harm; (2) a lack of other adequate means to avoid the threatened harm; and (3) a direct causal relationship that may be reasonably anticipated between the action taken and the avoidance of the harm."  *Id.* (quoting *Buckley*, 7 Va. App. at 33).  A defendant charged with possession of a firearm after having been convicted of a felony under Code § 18.2-308.2 may raise this defense.  *See id.* at 47 ("Thus, we conclude the trial court erred in holding the defense of necessity or self-defense may never be asserted to a charge of possession of a firearm by a convicted felon.").

Appellant argues he needed to possess a firearm because people were fighting outside the bar.  However, Andrews testified that appellant armed himself after the first fight dispersed and before the second fight began.  There was no evidence that appellant faced an imminent risk of harm that necessitated arming himself at any point, and his involvement in the second fight was the result of his own choice.  Even if such evidence were adduced at trial, appellant had other reasonable means of protecting himself, including leaving the scene, as Andrews instructed him to do.  This was a feasible avenue of safety as evidenced by the fact that other individuals were successfully fleeing when officers arrived.  And given the sufficient evidence to establish that appellant's use of the firearm was premeditated and malicious, the trial court reasonably concluded that his possession of the firearm arose out of his intention to commit harm, not out of fear for his own safety.  None of the elements of the necessity defense are met here.  Consequently, the trial court did not err in rejecting appellant's necessity defense and finding the evidence sufficient to support his conviction for possession of a firearm by a convicted felon.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*